**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN THE PARK SAVOY CATERERS LLC t/a THE PARK SAVOY and IN THE PARK CHATEAU CATERERS LLC, on behalf of itself and all others similarly situated, <br><br>          Plaintiffs, <br><br> v. <br><br> SELECTIVE INSURANCE GROUP, INC., and SELECTIVE INSURANCE COMPANY, <br><br>          Defendants. | Case No.:  2:20-cv-06869-MCA-LDW |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ i

FACTS BEFORE THE COURT ....................................................................... 3

LEGAL STANDARD........................................................................................ 5

ARGUMENT ..................................................................................................... 6

I. THE VIRUS EXCLUSION BARS COVERAGE ................................... 6

II. PLAINTIFFS DO NOT STATE A CLAIM FOR COVERAGE
UNDER ANY OF THE PROVISIONS THEY INVOKE. ......................... 9

A. The Business Income Provision Does Not Apply Because
There Is No "Physical Loss Of Or Damage To" Property
At A "Covered Location." ........................................................ 10

B. There Is No Coverage Under the Policies' Civil Authority
Provision .................................................................................. 15

C. There Is No Independent Coverage For Extra Expense........ 19

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Angstadt v. Midd-West Sch. Dist.*,
    377 F.3d 338 (3d Cir. 2004) .......................................................................1, 4

*Buczek v. Continental Cas. Ins. Co.*,
    378 F.3d 284 (3d Cir. 2004) .......................................................................5, 6

*Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*,
    636 F.3d 683 (5th Cir. 2011) ..........................................................................16

*Gavrilides Mgmt. Co. et. al v. Michigan Ins. Co.*,
    No. 20-258-CB-C30 (Ingham County)...........................................................13

*Gilbert Spruance Co. v. Pa. Mfrs.' Ass'n.*,
    629 A.2d 885, 892 (N.J. 1993) .........................................................................5

*Gladstone v. Westport Ins. Corp.*,
    No. 10-652, 2011 U.S. Dist. LEXIS 132100 (D.N.J. Nov. 16,
    2011) ..................................................................................................................8

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of America*,
    No. 2:12-cv-04418, 2014 U.S. Dist. LEXIS 165232 (D.N.J. Nov.
    25, 2014) .........................................................................................................14

*Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co.*,
    483 A.2d 402 (N.J. 1984) .................................................................................6

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990)...........................................................................................8

*Iqbal v. Ashcroft*,
    556 U.S. 662 (2009).........................................................................................15

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
    No. 4:19-cv-00693-SAL, 2020 U.S. Dist. LEXIS 31081 (D.S.C.
    Feb. 24, 2020) .................................................................................................16

*Med. Transcription Billing, Corp. v. Randolph Pain Relief & Wellness
    Ctr.*, No. A-4673-17T2, 2019 N.J. Super. Unpub. LEXIS 930
    (Super. Ct. App. Div. Apr. 23, 2019...................................................................1

ii

*Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014) ..........................................................11, 12

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
    385 F.Supp.2d 280 (S.D.N.Y. 2005) ................................................................11

*Port Authority of New York & New Jersey v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002) .................................................................10, 13, 18

*Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of Am.*,
    No. A-0170-15T1, 2017 N.J. Super. Unpub. LEXIS 1072 (Super.
    Ct. App. Div. May 3, 2017). ........................................................................11, 18

*Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
    No. 20-CV-3311-VEC (S.D.N.Y. May 14, 2020)............................................12

*State Nat'l Ins. Co. v. Cty. of Camden*,
    10 F. Supp. 3d 568 (D.N.J. 2014)......................................................................5

*Syufy Enter. v. Home Ins. Co. of Ind.*,
    1995 U.S. Dist. LEXIS 3771 (N.D. Cal. Mar. 20, 1995) .................................16

*United Air Lines, Inc. v. Ins. Co. of State of PA*,
    439 F.3d 128 (2d Cir. 2006) .............................................................................16

*United Airlines, Inc. v. Ins. Co. of State of Pa.*,
    385 F.Supp.2d 343 (S.D.N.Y.2005), *aff'd* 439 F.3d 128 (2d
    Cir.2006) ..........................................................................................................11

*United States v. Burkholder*,
    816 F.3d 607 (10th Cir. 2016) ...........................................................................8

*United States v. Ramos–Delgado*,
    763 F.3d 398 (5th Cir. 2014) .............................................................................8

*Vassiliu v. Daimler Chrysler Corp.*,
    839 A.2d 863 (N.J. 2004) ...................................................................................6

*Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*,
    406 N.J. Super. 524 (App. Div. 2009)...............................................................14

*Wallace v. Sys. & Comput. Tech. Corp.*,
    1997 U.S. Dist. LEXIS 14677 (E.D. Pa. Sep. 22, 1997)....................................4

*Wurst v. State Farm Fire & Cas. Co.*,
  431 F. Supp. 2d 501 (D.N.J. 2006) ........................................................................6

**Other Authorities**

10 *Couch on Insurance* § 148:46 (3d ed. 1998) .....................................................11

Executive Order No. 103 (2020) .....................................................................*passim*

Executive Order No. 104 (2020) .....................................................................*passim*

Executive Order No. 107 (2020) .....................................................................*passim*

This is one of hundreds of lawsuits filed around the United States against insurers seeking coverage for losses allegedly suffered as a result of the COVID-19 pandemic. Although no one disputes the economic havoc the pandemic has wreaked, the narrow question before the Court is whether the insurance policies ("Policies") issued by Defendant Selective Casualty Insurance Company ("Selective Casualty" or "Defendant")[1] to In The Park Savoy Caterers LLC t/a The Park Savoy and In The Park Chateau Caterers LLC (collectively "Plaintiffs") provide coverage for Plaintiffs' asserted losses.[2] The answer, under the Policies' plain language, is that they do not.

---

[1] Plaintiffs also have sued Selective Insurance Group, Inc. ("Selective Parent"), whose only connection to this case is that it is the parent company of Selective Casualty. *See* Compl. ¶ 16 (Selective Parent "owns a number of subsidiaries, including Defendant Selective Casualty Insurance, that provide business property insurance throughout the U.S."); Ex. A at 3; Ex. B at 366 (Policies issued by Selective Casualty). The Complaint contains no other allegation concerning Selective Parent, and for good reason. Selective Parent is a publicly-traded insurance holding company that is not authorized to underwrite insurance and did not issue the Policies—or any other insurance policy—to Plaintiffs or anyone else. For that additional reason, Selective Parent is not a proper defendant and the claims against it should be dismissed. *See Med. Transcription Billing, Corp. v. Randolph Pain Relief & Wellness Ctr.*, No. A-4673-17T2, 2019 N.J. Super. Unpub. LEXIS 930, at *14 (Super. Ct. App. Div. Apr. 23, 2019) (parent corporations not liable on contracts entered into by subsidiaries absent circumstances not alleged here, *e.g.*, alter ego or agency).

[2] Selective Casualty issued Policy S 1982142 to In the Park Savoy Caterers LLC and Policy S 2306969 to In the Park Chateau Caterers LLC, both in effect from April 6, 2019 to April 6, 2020. Compl. ¶ 18-19. The Policies are attached as Exhibits A and B, and properly may be considered by the Court as documents quoted at length in the Complaint. *See* Compl. ¶ 39-44; *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). Bates numbers have been added to the Policies for ease of reference. The page number for Exhibits A and B refers to the bates number (i.e., SEL000001 is "at 1").

Plaintiffs assert that they, like other businesses around the country, suffered losses when, as a result of the outbreak of Covid-19, various governmental entities issued "Stay at Home Orders."  Compl. ¶ 3.  Plaintiffs disclaim any assertion that "coronavirus was found in or on [their] insured property," Compl. ¶ 46, and they do not allege that the Stay at Home Orders were issued because of the presence of the coronavirus at some other identified property near their property.  Instead, they assert that the Stay at Home Orders have rendered them "unable to use their property for its intended purpose," *id.* ¶ 45.

The Policies, however, only provide coverage where there has been physical loss or damage either to the insured's property (under the Business Income and Extra Expense coverages) or to a property other than the insured's property which results in a civil authority order closing the insured's property (under the Civil Authority coverage).  Moreover, regardless of what coverage Plaintiffs claims is triggered, the Policies specifically exclude coverage for any "loss, cost, or expense ***caused by, resulting from, or relating to any virus***."  Ex. A at 97; Ex. B at 460.[3]  This "virus exclusion" goes on to state that it "applies to, but is not limited to, any loss, cost, or expense as a result of:  a. Any contamination by any virus, bacterium, or other microorganism; or b. ***Any denial of access to property because of any virus***,

---

[3] All emphases are added unless otherwise noted.

bacterium, or other microorganism."  *Id.*  The application of this exclusion to the losses alleged by Plaintiffs is straightforward and dispositive.

In this memorandum, Selective first demonstrates why the virus exclusion is a complete bar to coverage because it applies regardless of which coverage agreement Plaintiffs invoke.  Selective then demonstrates why, even if there were no virus exclusion, there is no coverage under the Policies because Plaintiffs have failed to allege, and cannot allege, the physical loss or damage necessary to satisfy the insuring agreements of either the Business Income, Extra Expense, or Civil Authority coverages.

## FACTS BEFORE THE COURT

Plaintiffs operate food catering businesses in New Jersey.  Compl. ¶ 14-15. In March 2020, the World Health Organization declared the outbreak of Covid-19 a worldwide pandemic.  *Id.* ¶ 1.  In the wake of this declaration, the Centers for Disease Control and Prevention advised that individuals adopt various social distancing measures.  *Id.* ¶ 2.  Plaintiffs allege that, "[a]s a result, many governmental entities entered civil authority orders suspending or severely curtailing business operations of non-essential businesses."  *Id.* ¶ 3.

In New Jersey, Governor Murphy issued several executive orders concerning the Covid-19 pandemic.  On March 9, 2020, Governor Murphy entered Executive

Order ("Exec. Order") 103, which declared a state of emergency.  Ex. C.[4]  A week later, Exec. Order 104 imposed social-distancing guidelines, prohibited gatherings of over fifty people, and limited dining establishments to take-out and/or delivery options.  Ex. D at 2.  On March 21, 2020, Exec. Order 107 sought to further limit individual interaction "to mitigate community spread of COVID-19," but continued to permit dining establishments to operate for takeout and delivery.  Ex. E.  Each of these orders recites that it was issued as a direct result of, and in response to, the spread of Covid-19.  *See* Ex. C [Exec. Order 103] at 1-4; Ex. D [Exec. Order 104] at 1 ("[I]n light of the dangers posed by COVID-19, I issued Executive Order No. 103 (2020) on March 9, 2020."); *id.* at 1-4; Ex. E [Exec. Order 107] at 1 ("I issued Executive Order No. 104 . . . which established statewide social mitigation strategies for combatting COVID-19."); *id.* at 1-4.

Plaintiffs claim that, as a result of these orders, they "have been unable to use their property for its intended purpose."  Compl. ¶ 45; *see also id.* ¶ 4 ("The result

---

[4] The Complaint does not attach any Stay at Home Orders, but its allegations broadly refer to and rely on those orders.  Such orders are properly referenced in this brief, both as matters of public record and documents referenced in the Complaint. *See Angstadt*, 377 F.3d at 342; *see also Wallace v. Sys. & Comput. Tech. Corp.*, 1997 U.S. Dist. LEXIS 14677, at *19-20 (E.D. Pa. Sep. 22, 1997) (noting Third Circuit has held in context of motions to dismiss that courts may refer to "documents referenced [in the complaint], matters of public record, and undisputedly authentic documents attached as exhibits to the defendant's motion to dismiss if the plaintiffs' claims are based on those documents") (citations omitted)).  All cited Executive Orders are published on the State of New Jersey website, available at https://nj.gov/infobank/eo/056murphy/, and attached hereto for the Court's convenience as Exhibits C (Exec. Order 103), D (Exec. Order 104), and E (Exec. Order 107).

of these far-reaching restrictions and prohibitions has been catastrophic for most non-essential businesses, especially restaurants and other foodservice businesses."). Plaintiffs do not, however, allege that their properties were physically damaged, nor do they offer any allegation about the nature or type of any loss they suffered.

Plaintiffs assert that Defendants have denied their property insurance claims for the losses they allegedly sustained "from measures put in place by the civil authorities to stop the spread of COVID-19 among the population." Compl. ¶ 9. Plaintiffs claim the denials were improper and that coverage exists under three insuring provisions within the Policies' Commercial Property Coverage Part: "Business Income," "Civil Authority," and "Extra Expense." *See* Compl. ¶ 71-116; Ex. A at 122, 143; Ex. B at 485, 506. Plaintiffs are incorrect.

## LEGAL STANDARD

In New Jersey, the "interpretation of an insurance contract is a question of law." *State Nat'l Ins. Co. v. Cty. of Camden*, 10 F. Supp. 3d 568, 574-75 (D.N.J. 2014).[5] Indeed, "[a]n insurance policy should be interpreted according to its plain meaning." *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004). When "the terms of the contract are clear and unambiguous, the court is bound to enforce the policy as it is written," and give effect to the policy's plain language. *Id.*

---

[5] As Policies were issued to Plaintiffs at New Jersey addresses, with scheduled locations entirely in New Jersey (*See* Ex. A at 339; Ex. B at 405), New Jersey law governs their construction. *See Gilbert Spruance Co. v. Pa. Mfrs.' Ass'n.*, 629 A.2d 885, 892 (N.J. 1993).

(internal quotations omitted).  Importantly, "in the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." *Buczek*, 378 F.3d at 288 (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)).  Plaintiffs have the burden of showing that their claim falls within coverage, while the insurer must demonstrate the application of any exclusions. *Wurst v. State Farm Fire & Cas. Co.*, 431 F. Supp. 2d 501, 504 n.6 (D.N.J. 2006) (citing *Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co.*, 483 A.2d 402, 408 (N.J. 1984)).

## ARGUMENT

### I.   THE VIRUS EXCLUSION BARS COVERAGE.

As explained below, Plaintiffs have not met their burden of alleging facts that if proven true would constitute losses falling within the scope of any of the Policies' insuring agreements.  But even if they could allege such facts, the Policies' "Virus or Bacteria" exclusion would bar coverage.  That exclusion states:

> "We" do not pay for loss, cost, or expense ***caused by, resulting from, or relating to any virus***, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.
>
> ***This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of***:
>
> a.   Any contamination by any virus, bacterium, or other microorganism; or
>
> b.   ***Any denial of access to property because of any virus, bacterium, or other microorganism***.

Ex. A at 97; Ex. B at 460. This exclusion applies to all coverages under the Policies. *Id*. ("The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, ***including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority***.").

By its plain terms, this exclusion bars Plaintiffs' claims for coverage. Plaintiffs base each of their claims for coverage on the Stay at Home Orders, Compl. ¶ 45, which, as Plaintiffs readily acknowledge, were issued as a direct result of the Covid-19 virus. *See* Compl. ¶ 3 (Stay at Home Orders were issued "[a]s a result" of "state government. . . recognize[ing] the need to take steps to protect the health and safety of their residents from . . . COVID-19."); *id*. ¶ 9 (Orders were "put in place by the civil authorities to stop the spread of COVID-19 among the population"); *id*. ¶ 46 (Orders "were precautionary measures taken by their respective States . . . to prevent the spread of COVID-19 in the future"). In one place, in fact, Plaintiffs go further and assert that their claimed losses "stem[] from the COVID-19 pandemic" itself. *Id*. ¶ 93(i). The Orders themselves similarly recite at great length that they were issued because of Covid-19. *See* Ex. C at 1-4; Ex. D at 1-4; Ex. E at 1-4. There can be no question that the losses for which Plaintiffs seek coverage were "caused

by, result[] from, or relat[e] to" a virus, and therefore fall within the Policies' virus exclusion.

Plaintiffs acknowledge the virus exclusion, but claim it does not apply because their losses "were not caused by" a virus.  Compl. ¶ 46.  "Rather," they claim, "the efficient proximate cause of Plaintiffs' . . . losses were precautionary measures taken by their respective State and/or counties to prevent the spread of COVID-19 in the future, not because coronavirus was found in or on Plaintiffs' insured property."  *Id.*  This argument ignores the terms of the exclusion.   The virus exclusion specifically encompasses any and all losses "caused by, resulting from, *or relating to any virus.*"  Ex. A at 97; Ex. B at 460.  According to this plain language, causation—much less proximate causation—is not required for the exclusion to apply.  Instead, a loss need only result from, or relate to, a virus.  The term "relate to" is "deliberately expansive," and includes anything having "a connection with or reference to" the relevant matter.  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138-39 (1990); *Gladstone v. Westport Ins. Corp.*, No. 10-652, 2011 U.S. Dist. LEXIS 132100, at *25 (D.N.J. Nov. 16, 2011) ("Related is commonly understood to be a broad term.  Accordingly, courts have found that claims are related when there is a logical connection between them.").[6]

---

[6] "[T]he ordinary meaning of 'result[s] from,'" in turn, "'imposes a requirement of actual or but-for causation,' and not proximate causation."  *United States v. Burkholder*, 816 F.3d 607, 614 (10th Cir. 2016) (quoting *United States v. Ramos–Delgado*, 763 F.3d 398, 401 (5th Cir. 2014) ), *cert.*

Plaintiffs' alleged losses obviously have "a connection with" the Covid-19 virus.  There simply is no plausible argument that the Executive Orders that shut down so much of our economy and national life did not result from, or relate to, the Covid-19 virus.  That is especially true given that Plaintiffs concede—and the Orders themselves recite—that such a connection did exist.  Simply put, the Orders were issued because of the coronavirus; if not for the coronavirus, the Orders would not exist.

Plaintiffs' alleged losses – the business income and extra expense they suffered because the Covid-19 Stay At Home Orders limited their ability to conduct business – were caused by, the result from, and relate to the coronavirus.   The virus exclusion clearly applies regardless of under what coverage Plaintiffs seek to recover.  Accordingly, the Court should dismiss the Complaint with prejudice for this reason.

## II.    PLAINTIFFS DO NOT STATE A CLAIM FOR COVERAGE UNDER ANY OF THE PROVISIONS THEY INVOKE.

Even setting aside the virus exclusion, each of the three coverages invoked by Plaintiffs—Business Income, Civil Authority, and Extra Expense—requires direct

---

*denied*, 574 U.S. 1054 (2014)).  That is particularly true here, where the terms "causing" and "resulting from" are listed in the disjunctive. Ex. A at 97; Ex. B at 460.  Here, Plaintiffs do not— and could not possibly—dispute that the Covid-19 virus is a but-for cause of its alleged losses. Plaintiffs simply assert that there was an intervening cause of those losses, *i.e.*, the Stay at Home Orders.  Compl. ¶ 46.

physical loss of or damage to property.  The Complaint, however, pleads no facts that, if proved, would establish such physical loss or damage.  The Court should dismiss Plaintiffs claims for this additional reason.

### A. The Business Income Provision Does Not Apply Because There Is No "Physical Loss Of Or Damage To" Property At A "Covered Location."

The plain terms of the Policies' "Business Income" coverage do not apply to Plaintiffs' alleged losses (Counts I and II).[7]  Unless excluded or subject to limitations, the Policy's Commercial Output Program Income Coverage Part covers lost earnings under certain conditions:

> "We" provide the coverages described below during the "restoration period" when "your" business is necessarily wholly or partially interrupted by ***direct physical loss of or damage to property at a "covered location"*** or in the open (or in vehicles) within 1000 feet thereof ***as a result of a covered peril***.

Ex. A at 122; Ex. B at 485.  A covered peril is similarly defined in terms of "direct physical loss."  Ex. A at 111; Ex. B at 474.

The Third Circuit has explained that "physical damage" means that there has been "a distinct, demonstrable, and physical alteration" of the insured's property's structure.  *Port Authority of New York & New Jersey v. Affiliated FM Ins. Co.*, 311

---

[7] The Complaint refers interchangeably to "Business Income Coverage" and "Commercial Output Program Income Coverage," which is the nomenclature used in the Policy.  *See, e.g.*, Compl. ¶¶ 77, 81.  This appears to have occurred because the document appears to have been recycled from an action against a different insurer, Chubb.  *See id.* ¶ 50 ("Upon information and belief, Chubb belongs to and supports the trade groups' position.").

F.3d 226, 235 (3d Cir. 2002) (quoting 10 *Couch on Insurance* § 148:46 (3d ed. 1998)).[8]   Direct physical loss of or damage to property is distinct from an economic loss caused by an interruption to business.   *See, e.g.*, *Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. A-0170-15T1, 2017 N.J. Super. Unpub. LEXIS 1072, at *11 (Super. Ct. App. Div. May 3, 2017)  (holding that, despite economic loss, the business income coverage was not triggered because the physical damage occurred "offsite"); *United Airlines*, 385 F. Supp. 2d at 349 (holding that "the word 'damage'" does not include "economic" damage); *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 288 (holding that "'direct physical' modifies both loss and damage").

As *Couch* puts it:

> The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

10A *Couch On Insurance* § 148.46 (3d Ed. 2019).

---

[8] *See also United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F.Supp.2d 343, 349 (S.D.N.Y.2005), *aff'd*, 439 F.3d 128 (2d Cir.2006) ("The inclusion of the modifier 'physical' before 'damages' . . . supports [defendant's] position that physical damage is required . . ."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F.Supp.2d 280, 287–88 (S.D.N.Y. 2005) ("'direct physical' modifies both loss and damage," and therefore "the interruption in business must be caused by some physical problem with the covered property ... which must be caused by a 'covered cause of loss' "); *Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form *to the premises itself*, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure").

This need for tangible loss or damage is reinforced by the fact that the Business Income coverage applies only during the "restoration period," when the insured property is being repaired after a loss.  This period begins "following the ***direct physical loss of or damage to property*** at a 'covered location' that ***is caused by a covered peril***" and ends "on the date the property should be ***rebuilt, repaired, or replaced***…" *See* Exs. A & B, Form CO 12 81 04 02.  Absent physical loss or damage, of course, there is nothing to rebuild, repair or replace. *See Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it").  To posit that the Policy covers losses that are not physical and, therefore, do not require repair, rebuilding, or replacement, would have the effect of both obviating the definition and making the term of coverage indefinitely indeterminate.  Instead, the terms "all strongly suggest that the damage contemplated by the Policy is physical in nature." *Phila. Parking Auth*., 385 F. Supp. 2d at 287.

The caselaw applying these principles to claims based on the Covid-19 pandemic is (rapidly) developing and—consistent with the foregoing principles—the United States District Court for the Southern District of New York has rejected the claim that the pandemic, or the resulting stay-at-home orders, constitutes "direct physical loss or damage to property." *Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.,* No. 20-CV-3311-VEC (S.D.N.Y. May 14, 2020), Transcript of Oral Ruling on

12

Preliminary Injunction, at 15 (attached as Exhibit F).  In so ruling, the Court noted

that there is a distinction between not operating, on the one hand, and not operating

because of damage to the property, on the other:

> I feel bad for your client. I feel bad for every small business that is
> having difficulties during this period of time.  But New York law is
> clear that *this kind of business interruption needs some damage to the*
> *property to prohibit you from going.*  You get an A for effort, you get
> a gold star for creativity, but this is just not what's covered under these
> insurance policies.

*Id.*

Similarly, on July 1, 2020, at the conclusion of oral argument, a Michigan

judge dismissed two restaurants' claims for Covid-19-related business interruption

coverage on materially identical grounds.  *Gavrilides Mgmt. Co. et. al v. Michigan*

*Ins. Co.*,   No.   20-258-CB-C30   (Ingham   County),   docket   accessible   at

https://courts.ingham.org/CourtRecordSearch/.[9]

Likewise here, Plaintiffs do not allege that the Covid-19 virus or the resulting

Stay at Home Orders "demonstrably alter[ed] the components of [their] building."

*Port Auth.*, 311 F.3d at 235.   To be sure, there are certain instances where it may be

possible for "physical loss" to occur based on the presence of a physical agent (such

as asbestos or ammonia) that is so extensive at a specific property that the property

---

[9] Argument available at: https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be.

becomes "uninhabitable" or substantially "unusable." *See id.* at 236.[10]  But even there, "'a distinct, demonstrable, and physical alteration'" of the fundamental nature of the property is required, and any such "[p]hysical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." 311 F.3d at 235.  There is no allegation in the Complaint here that even approaches such a situation.

Instead, the substance of Plaintiffs' Complaint is that the Covid-19 pandemic is occurring; "Stay at Home Orders" were enacted by state and local officials in response to the pandemic; and Plaintiffs experienced economic losses as a result. Compl. ¶¶ 32, 34, 83.  In fact, the only allegation even remotely connected to Plaintiffs' property is the claim that their losses were ***not*** sustained "because coronavirus was found in or on Plaintiffs' insured property."  Compl. ¶ 46.  Indeed, it is notable that Plaintiffs do not seek a judgment to recover for physically damaged property at their locations (or a declaration that there was such physically damaged property at their locations). Plaintiffs thus emphatically confirm that their losses are purely economic, not physical.

Plaintiffs' assertion that the Stay at Home Orders rendered them "unable to

---

[10] Similarly, in *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of America*, No. 2:12-cv-04418, 2014 U.S. Dist. LEXIS 165232, at *13, 15 (D.N.J. Nov. 25, 2014), the release of ammonia "physically transformed the air" in a facility, making it "unfit for occupancy until the ammonia could be dissipated" and necessitating repair. *Id.* at *6-*7; *see also Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 406 N.J. Super. 524, 540 (App. Div. 2009) (finding coverage where electrical equipment became "physically incapable" of performing its essential function).

use their property for its intended purpose" and required "suspension of operations at the covered locations" does not remedy this deficiency.  Compl. ¶¶ 45-46, 83.  The claimed "[i]nab[ility] to use," and the "suspension of operations," refers to restrictions on the Plaintiffs' ability to **_use or operate_** the property as before or as desired, not the property's physical condition. Plaintiffs do not allege that their property was rendered physically "useless or uninhabitable."[11]

Nor is this result altered by Plaintiffs' conclusory assertion, unsupported by any facts, that the "Stay at Home Orders caused direct physical loss and damage" to their property.  Compl. ¶ 83.  This is not a well-pleaded allegation for purposes of a Rule 12(b)(6) motion.  *See Iqbal v. Ashcroft*, 556 U.S. 662, 678-79 (2009) (complaint with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot survive a motion to dismiss).

**B.   There Is No Coverage Under the Policies' Civil Authority Provision.**

Plaintiffs also assert claims under the Policy's "Civil Authority" provision (Counts III and IV), which likewise is part of the Commercial Output Program Income Coverage Part.  This coverage is modified by an endorsement which provides, in relevant part:

> "We" extend "your" coverage for earnings and extra expense to include loss sustained while access to "covered locations" or a "dependent location" is specifically denied by an order of civil authority. **_This order must be a result of direct physical loss of or damage to property, other_**

---

[11] As discussed below, under the Closure Orders, Plaintiffs could still access their properties.

**than at a "covered location" and must be caused by a covered peril.**

Ex. A at 143; Ex. B at 506.  Thus, "earnings" and "extra expense" losses are covered under the Civil Authority Income Coverage Extension, but only where (1) access to "covered locations" or a dependent location is "specifically denied by an order of civil authority"; and (2) the order denying that access "was a result of direct physical loss of or damage to property, other than at a 'covered location.'"  *See id.*

Provisions such as the one at issue here are common in commercial property insurance policies, and frequently have been judicially construed.  The courts have made clear that "[c]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises . . . ."  *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011); *see also United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 134 (2d Cir. 2006) (no civil authority coverage for airline after airport shut down following September 11 attacks based on "fears of future attacks" rather than as a "direct result of damage to" the Pentagon); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-cv-00693-SAL, 2020 U.S. Dist. LEXIS 31081, at *14 (D.S.C. Feb. 24, 2020) (hurricane evacuation order prohibiting law firm from accessing its office could not recover under civil authority provision); *Syufy Enter. v. Home Ins. Co. of Ind.*, 1995 U.S. Dist. LEXIS 3771, at *5-6 (N.D. Cal. Mar. 20, 1995) (civil authority

16

coverage not triggered because curfews issued during riots were meant to prevent property damage, not because of property damage).

In this case, Plaintiffs fail to state a claim for coverage under the Civil Authority provision for several reasons.  First, the Civil Authority provision requires "direct physical loss of or damage to property, other than at a 'covered location'" that is "caused by a covered peril."  Ex. A at 143; Ex. B at 506.[12]  The "physical loss of or damage to" and "covered peril" requirements in the Business Income and Civil Authority coverages are the same; the only difference is the location of the affected property.  But just as they do not allege any physical loss or damage to their own properties, Plaintiffs allege no such loss to any other property.

Second, the civil authority order itself "must be a result of" such physical loss or damage.  Ex. A at 143; Ex. B at 506.  But here, in contrast, the Stay at Home Orders are entirely removed from any relationship to property; by their terms, they concern person-to-person interaction.  *See, e.g,* Ex. D at 4 ("to mitigate community spread of COVID-19, it is necessary to limit the unnecessary movement of individuals in and around their communities and person-to-person interactions"); Ex. E at 2 (Stay at Home Orders "limited the scope of service and hours of operation for restaurants and certain retail establishments to balance the need to allow

---

[12] Again, a "covered peril" is defined in the Policy in terms of "direct physical loss."  Ex. A at 111; Ex. B at 474.

individuals to access food and other essential materials with the need to limit unnecessary person-to-person contact"). Furthermore, even if the Stay at Home Orders did address themselves to property, their words cannot alter the structure or functionality of the property in the manner required to meet the standard for "physical loss" or "physical damage." *Port Auth.,* 311 F.3d at 236. The basic requirement of physical change at a property outside of a "covered location" simply is not present.

Third, the Complaint does not identify any order by a civil authority pursuant to which "access to 'covered locations' or a 'dependent location'" has been "specifically denied." Ex. A at 143; Ex. B at 506. To satisfy this requirement of the Policies, Plaintiffs must plead facts that, if proved, would show that access to their premises was "totally and completely prevented, *i.e.* made impossible." *Schultz Furriers*, 2017 N.J. Super. Unpub. LEXIS 1072, at *11. The Complaint includes no allegation that even approaches such a showing. To the contrary, the Stay at Home Orders explicitly permitted food service businesses to access their properties and provide limited services, *See* Ex. D at 7, while customers were allowed to visit restaurants to pick up takeout food or beverages. *See* Ex. E at 5. Even if Plaintiffs' business declined, that is not the same as being "denied access" to their property. Absent such denial, the Civil Authority coverage cannot apply.

18

## C.  There Is No Independent Coverage For Extra Expense.

Plaintiffs also include separate claims for "Extra Expense" coverage (Counts V and VI).  The Extra Expense provision in the Policy's Commercial Output Program Income Coverage Part states:

> "We" cover only the extra expenses that are necessary during the "restoration period" that "you" would not have incurred ***if there had been no direct physical loss or damage to property caused by or resulting from a covered peril***.

Ex. A at 122; Ex. B at 485.

Extra expense, like earnings, is a facet of both the Business Income and Civil Authority coverages.  And, like those other coverages, Extra Expense coverage applies only where there has (i) been "direct physical loss or damage to property" that (ii) was "caused by or resulting from a covered peril."  As discussed, Plaintiffs' complaint fails both of these requirements.  Nor have Plaintiffs alleged, under the subsequent sentence in the provision, that it incurred any Extra Expense "to avoid or reduce the interruption of 'business,'" much less that it did so to "continue operating at a 'covered location', replacement location, or a temporary location."  *Id.* For this reason, as well as those requiring dismissal of Counts I-IV, Counts V and VI fail to state a claim upon which relief can be granted.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.

Dated: July 20, 2020

/s/ *William T. Corbett, Jr.*
William T. Corbett, Jr., Esq.
COUGHLIN DUFFY, LLP
350 Mount Kemble Avenue
Morristown, New Jersey 07962
(973) 631-6061
*Attorney for Defendants Selective Insurance Group, Inc. and Selective Casualty Insurance Company (incorrectly named as Selective Insurance Company)*